IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs October 6, 2009

## STATE OF TENNESSEE v. PIERRE TERRY, aka PIERRE WALKER

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-01148     W. Otis Higgs, Jr., Judge**

**No. W2009-00169-CCA-R3-CD   -   Filed December 8, 2009**

The defendant, Pierre Terry, also known as Pierre Walker, was convicted by a Shelby County Criminal Court jury of attempted voluntary manslaughter, a Class D felony; aggravated robbery, a Class B felony; and evading arrest, a Class A misdemeanor. He was sentenced to three years, ten years, and eleven months, twenty-nine days, respectively. The court ordered that the felony sentences be served consecutively to each other and the misdemeanor sentence be served concurrently for an effective term of thirteen years as a Range I offender. On appeal, the defendant challenges the sentences imposed by the trial court on his felony convictions. After review, we modify the defendant's sentence for aggravated robbery to eight years and affirm the sentences imposed by the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender; Harry E. Sayle, III (on appeal), Robert Felkner and Kindle Nance (at trial), Assistant Public Defenders, for the appellant, Pierre Terry, aka Pierre Walker.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

This case arises out of the robbery of a Little Caesar's Pizza on October 18, 2007, and the defendant's subsequent physical struggle with and flight from a police officer. For his involvement,

the defendant was indicted in count one of attempted first degree murder, in count two of aggravated robbery, and in count three of evading arrest. A trial was conducted in October 2008.

According to the State's proof at trial, Keith Copeland, manager of Little Caesar's Pizza, saw the defendant two times prior to the defendant's robbing the store on October 18. Both times, the defendant came into the store requesting a job application, the second time being when the store opened the morning of the robbery. After Copeland told the defendant he was out of applications, the defendant left the store and stood toward the side of the store front. While the defendant was standing outside, one or two customers came and left, and then the defendant walked back in the store wearing a hat and dark glasses. As he approached the counter, the defendant said, "[D]rop it off big brother" and revealed a gun tucked in his waistband.

Copeland saw that the defendant was struggling to remove his gun because of a backpack across his chest, so Copeland removed the register till from the drawer, laid it on the counter, and ran out the back door while yelling for the other employee to follow him. Copeland called 911 from his cell phone. When he returned to the store, Copeland saw that the forty to fifty dollars that had been in the till was gone. Afterward, Copeland reviewed the store's surveillance video and saw the defendant take the money from the till.

Officer Nikolas Kollias with the Memphis Police Department was patrolling the area around Little Caesar's when he heard the radio call about the robbery and spotted the defendant with what appeared to be a pistol tucked in his waistband. Officer Kollias stopped the defendant and ordered him to the ground. With his knee on the defendant's back, Officer Kollias removed the pistol from the defendant's waistband and noticed that it was only a BB gun. As Officer Kollias prepared to handcuff the defendant, the defendant rolled over and stood up, leaving Officer Kollias on the ground. The defendant did not run away but, instead, knocked Officer Kollias over so that he was facedown. The defendant struck Officer Kollias each time he attempted to get up.

Finally, Officer Kollias grabbed the defendant's knees, but he felt the defendant pulling on his holster. Officer Kollias yelled for help to a nearby bystander and released his hold of the defendant's knees so he could put his hands over his holster. Officer Kollias realized that his gun was not in the holster and saw it in the defendant's right hand, coming toward his head. Officer Kollias instinctively slapped the gun away from the defendant's hand and then jumped on it to keep it from the defendant. The defendant hit Officer Kollias in the back of the head seven or eight times before finally running away. The defendant lost a shoe during the struggle, and he was soon after apprehended by other officers.

Harold Scott had just arrived home with his mother when he saw a struggle between a police officer and the defendant. Scott witnessed the defendant hit and kick the officer, and he was afraid the defendant was going to get the officer's gun. Scott got involved in the struggle, and the defendant eventually fled.

Officer Thomas Berryhill with the Memphis Police Department arrived on the scene as another officer was taking the defendant into custody. Officer Berryhill took the defendant back to Little Caesar's where the witnesses identified him as the robber.

Officers David Galloway and Lavern Jones with the Memphis Police Department Crime Scene Division processed the scene at Little Caesar's and the scene of the altercation between Officer Kollias and the defendant. Officer Galloway recovered a black carry bag from Little Caesar's, and Officer Jones recovered a black BB pistol, a black baseball cap, sunglasses, and an athletic shoe from the secondary scene.

Sergeant James Taylor with the Memphis Police Department took a statement from the defendant in which he admitted robbing the Little Caesar's but said he did so only because he was forced to by a man known as "J Rock." The defendant admitted struggling with a police officer but denied trying to take control of the officer's weapon.

Following the conclusion of the proof, the jury convicted the defendant of attempted voluntary manslaughter as included in count one, aggravated robbery in count two, and evading arrest in count three.

## ANALYSIS

The defendant challenges the sentences imposed by the trial court. Specifically, he argues that the court erred in its application of enhancement factors and imposition of consecutive sentences. At the sentencing hearing, the defendant admitted that he robbed the store but stated that he was forced to do it. He apologized for his actions but said that "[he] really just didn't do nothing that really -- Just as far as like injuring anybody[.]"

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical

information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses; (h) any statements made by the accused in his own behalf; and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

As a Range I standard offender, the defendant faced a potential sentence of eight to twelve years on the aggravated robbery conviction and two to four years on the attempted voluntary manslaughter conviction. Tenn. Code Ann. § 40-35-112(a)(2), (4). The trial court enhanced the defendant's sentences based on a finding that he possessed or employed a deadly weapon during the commission of the attempted voluntary manslaughter and had no hesitation about committing a crime when the risk to human life was high. Id. § 40-35-114(9), (10). The court rejected the mitigating factors asserted by the defendant but awarded some mitigation based on his lack of a criminal record. The court imposed mid-range sentences of ten years on the aggravated robbery conviction and three years on the attempted voluntary manslaughter conviction, and a sentence of eleven months, twenty-nine days on the evading arrest conviction. The court ordered that the felony sentences be served consecutively, apparently accrediting the State's argument that the defendant was a dangerous offender, id. § 40-35-115(b)(4), and the misdemeanor sentence be served concurrently for an effective term of thirteen years.

The defendant argues that the trial court erred in enhancing his sentence for aggravated robbery. He asserts that because the weapon displayed was a BB gun, it was not a firearm or deadly weapon as required under section 40-35-114(9), and as such posed no risk to human life as required under section 40-35-114(10). We first note that it is clear from the State's argument at sentencing, and the trial court's statements, that the court did not use the defendant's possession or employment of a deadly weapon to enhance his sentence for aggravated robbery.

Regarding the trial court's enhancement of the defendant's sentence based on his commission of a crime when the risk to human life was high, we conclude the record does not support its application. A sentence may not normally be enhanced based on a factor inherent in the offense, as is this factor, see State v. Claybrooks, 910 S.W.2d 868, 872-73 (Tenn. Crim. App. 1994), but such factor may be applied when individuals other than the victim may have been harmed by the commission of the offense. See State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002). Here, while the

proof showed that another clerk was in the back of the store at the time of the robbery, there was no evidence that the clerk was endangered, other than being in the building.

Further, the "weapon" involved was a BB gun, and it is questionable whether a BB gun causes a high risk to human life. Certainly, a BB could damage one's eye or inflict pain, but it is hard to conceive a BB causing a risk to human life. See State v. Donald Ray Shirley, No. 03C01-9610-CR-00369, 1998 WL 268101, at *21 (Tenn. Crim. App. May 27, 1998), reversed on other grounds by State v. Shirley, 6 S.W.3d 243 (Tenn. 1999) (noting that the defendant's use of a BB gun did not warrant application of enhancement factor ten). Moreover, our research indicates a differentiation between a pellet gun, which has been found to be a deadly weapon, and a BB gun. See State v. Anthony Leon Moore, No. W2000-02862-CCA-R3-CD, 2002 WL 1482667, at *6 (Tenn. Crim. App. Feb. 11, 2002) (citing State v. Anthony Bowen, No. 1107, 1987 WL 13690 (Tenn. Crim. App. July 13, 1987), perm. to appeal denied (Tenn. July 8, 2002) (noting that the trial court found that the defendant committed the robbery with a deadly weapon, and even though one witness testified the weapon was a BB gun, another witness testified it was a pellet gun which this court had previously determined to be a deadly weapon). But see State v. Todd Anthony King, No. 994, 1987 WL 15530, at *3 (Tenn. Crim. App. Aug. 12, 1987), perm. to appeal denied (Tenn. Dec. 7, 1987) (citing Anthony Bowen and stating that "this Court has recently held a pellet or 'BB' gun to be a deadly weapon").

The State argues that the defendant's act of robbing a store while asserting that he was armed, and by all appearances being armed, created the risk of a gunfight had a police officer or armed customer entered the store. However persuasive, such argument is highly speculative and contingent on evidence not in the record. Accordingly, we conclude that no enhancement factors were applicable to the defendant's conviction for aggravated robbery and, therefore, modify the defendant's sentence for aggravated robbery from ten to eight years.

The defendant argues that the trial court erred in enhancing his sentence for attempted voluntary manslaughter based on his possession or employment of a firearm or deadly weapon, Tenn. Code Ann. § 40-35-114(9), and commission of a crime when the risk to human life was high. Id. § 40-35-114(10). He asserts that the enhancement was erroneous because the evidence was "tenuous at best" that he possessed or employed Officer Kollias' weapon and no one other than Officer Kollias was in the zone of danger during the altercation.

As to the defendant's possession of a firearm or deadly weapon, Officer Kollias testified at trial that the defendant removed the officer's service weapon from the holster and remembered seeing the gun coming toward his head. Officer Kollias acknowledged that in an earlier statement, when asked if the defendant ever pointed or attempted to use the gun against him, he said, "I couldn't tell, the only thing I was thinking about was getting the gun away from him[.]" Harold Scott, who witnessed the altercation, testified that he never saw the defendant get Officer Kollias' gun, but he explained that his view was partially impeded by his angle in relation to the defendant and Officer Kollias. In light of this evidence, we conclude that the trial court did not abuse its discretion in

finding that the defendant possessed a deadly weapon during the commission of the attempted voluntary manslaughter.

Regarding the defendant's commission of an offense when the risk to human life was high, we again note that such factor may be applicable when individuals other than the victim may have been harmed by the commission of the offense. See Imfeld, 70 S.W.3d at 707. The evidence shows that Harold Scott and his mother were in the vicinity of the altercation between the defendant and Officer Kollias, such that Scott was easily able to rush to Officer Kollias' aid. Even if a shot was not actually fired, others were present nearby during an altercation that involved a struggle and a loaded firearm. Therefore, the trial court did not abuse its discretion in applying this enhancement factor to the defendant's conviction for attempted voluntary manslaughter.

The defendant argues that the trial court imposed an excessive sentence by applying enhancement factors not supported by the record. As addressed above, the trial court inappropriately enhanced the defendant's sentence for aggravated robbery, and we have modified the defendant's sentence accordingly. As we understand, the defendant also argues that the 2005 Sentencing Act runs afoul of Blakely v. Washington, 542 U.S. 296 (2004), and its progeny. Our supreme court has held that the enhancement factors are advisory only and therefore do not violate Blakely. Carter, 254 S.W.3d at 344. This issue is without merit.

The defendant argues that the trial court abused its discretion in not applying the mitigating factor that he did not have a prior record. The record shows that the court rejected the defendant's arguments as to the statutory mitigating factors. However, the record also shows that the court acknowledged that the defendant did not have a record and said "[t]here has got to be some mitigation . . . for that." Later, in arriving at the sentence, the court said that it was mitigating based on the defendant being a first offender and having not been in any previous trouble. Therefore, this issue is without merit.

The defendant also challenges the trial court's imposition of consecutive sentences. Tennessee Code Annotated section 40-35-115 provides that a trial court may, in its discretion, impose consecutive sentencing when it finds any one of a number of different factors by a preponderance of the evidence, including that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

The trial court ordered that the defendant's sentences for aggravated robbery and attempted voluntary manslaughter be served consecutively presumably upon the State's argument that the defendant was a dangerous offender. The trial court did not state its reasoning on the record or make

the additional <u>Wilkerson</u> findings.  However, exercising our power of *de novo* review, we conclude that the defendant is a dangerous offender with no regard for human life and no hesitation about committing a crime when the risk to human life was high.

The evidence shows that the defendant fought with Officer Kollias and gained control of his weapon, despite having a number of opportunities to flee.  The altercation, which involved a loaded weapon, took place in the vicinity of two innocent bystanders and resulted in Officer Kollias' being transported to the emergency room.  Officer Kollias was hit by the defendant "upwards of twenty" times primarily on the top and back of his head while he was on the ground.  The defendant apologized for his actions but expressed he did not feel that he had really injured anyone.  In our view, an aggregate sentence of eleven years for the three offenses in this case is reasonably related to the severity of the offenses and is necessary to protect the public from a defendant who engaged in acts of violence against both a citizen and a police officer and repeatedly attacked the police officer even though he had numerous chances to escape.

## **CONCLUSION**

Based on the foregoing authorities and reasoning, we modify the defendant's sentence for aggravated robbery to eight years and affirm the sentences imposed by the trial court in all other respects.  The defendant's effective sentence is eleven years in the Department of Correction.

_____
ALAN E. GLENN, JUDGE